**Janet LEACH, Relator,**

v.

**Betty FISCHER, Ann Schattman, and the Tarrant County Democratic Executive Committee, Respondents.**

No. 2–84–056–CV.

Court of Appeals of Texas, Fort Worth.

April 10, 1984.

Johnston, Larson & Trantham, and Douglas R. Larson, Dallas, for relator.

Simon, Anisman, Doby, Wilson & Liles and Harold D. Hammett, Fort Worth, for respondents.

## OPINION

PER CURIAM.

Relator seeks leave to file a petition for writ of mandamus which requests this Court to order respondents to place her name on the May 5, 1984 Democratic Primary ballot as a candidate for United States Representative for the 12th Congressional District of Texas. Betty Fischer is the Chairwoman of the Tarrant County Democratic Party, and Ann Schattman is the Secretary of the Tarrant County Democratic Party Executive Committee. We grant relator's motion for leave to file the petition, but deny the relief requested therein.

Relator attempted to file her application for a place on the May 5, 1984 Democratic Primary ballot, along with a check for the required $1,500 filing fee, on February 6, 1984, the last day for filing same. She filed her application and filing fee with respondent Ann Schattman, who is authorized to receive such applications. (TEX. ELEC.CODE ANN. art. 13.18 Subdivision 4 (Vernon Supp.1984) provides that the County Executive Committee may name a secretary who is authorized to receive applications for a place on the primary ballot.) This check was made payable to the "State Democratic Executive Committee Primary". Schattman requested that an employee telephone the Secretary of State's office so as to determine if the check was acceptable as presented. After she was informed that the check was unacceptable because it had an incorrect payee, Schattman refused to accept same.

Relator presented a new check later that morning, payable to "Tarrant County Democratic Party Primary Fund", which was accepted by respondent Schattman, but was later returned unpaid because of insufficient funds. Relator was then notified by respondent Fischer that she was not entitled to have her name on the May 5, 1984 Democratic Primary ballot. Relator now seeks to have this Court compel respondents to place her name on the ballot, contending she had a clear legal right to have the first check accepted as presented, inasmuch as: (1) there is no statutory requirement for the form of the check; and (2) if the check was made payable to an incorrect payee, this was due to erroneous information furnished to relator by respondents' agents in the Austin office of the Texas Democratic Party, upon which information relator relied.

In factual support of her theory, relator has attached to her petition an affidavit of Mr. Bruce Director, the Texas Campaign Co-ordinator for the National Democratic Policy Committee (N.D.P.C.), the organization which supported relator, and which

was the drawer of the first check in question. Director states that:

> On behalf of all N.D.P.C. supported congressional candidates in the State of Texas I called the state office in Austin of the Texas Democratic Party on January 31, 1984. I called to ascertain to whom a check for the filing fee should be made payable.
>
> I spoke to a representative of the Texas Democratic Party who told me the check should be made payable to SDEC-Primary.
>
> Upon receiving this information I terminated the conversation.

Relator also attaches an affidavit of Dianne Oliver, the assistant treasurer of N.D.P.C. in New York, who states that had the original $1,500 check which had been made payable to "State Democratic Executive Committee Primary" been presented to the drawer bank, it would have cleared the N.D.P.C. account.

Respondents have filed affidavits from all the people who they state were working at the Texas Democratic Party Headquarters in Austin on the day relator's agent claims to have called there requesting information. These affidavits all state that the affiants did not convey to anyone the information that if they were filing for an office that was only voted upon by the citizens of less than one county, the filing fee should be made payable to the *State* Democratic Executive Primary Fund.

■ This court has jurisdiction to issue writs of mandamus in connection with election proceedings against any public officer or officer of a political party, to compel the performance of any duty imposed upon them in connection with the holding of a primary election. TEX.REV.CIV. STAT.ANN. art. 1735a (Vernon Supp.1984), and TEX.R.CIV.P. 383. In order for the writ to issue, however, the duty of the officer must be one clearly fixed and required by law. *Oney v. Ammerman*, 458 S.W.2d 54 (Tex.1970). Relator has the burden of unequivocally showing he is entitled to issuance of the writ of mandamus; if his right is doubtful, it must first be estab-

lished in some other form of action. *Wortham v. Walker*, 133 Tex. 255, 128 S.W.2d 1138, 1151 (1939). An appellate court may not deal with disputed areas of fact in a mandamus proceeding. *West v. Solito*, 563 S.W.2d 240, 245 (Tex.1978). Where a fact dispute exists, the district court is the appropriate forum. *Sparks v. Busby*, 639 S.W.2d 713, 716 (Tex.App.—Tyler 1982, no writ).

■ Our first step is to ascertain who is the proper payee when a candidate submits a check for payment of the required filing fee. Inasmuch as District 12 is composed of voters residing in less than one county (Tarrant) (*see* TEX.REV.CIV.STAT.ANN. art. 197g, sec. 12 (Vernon Supp.1984)), relator had to file her application with the County Chairwoman of the Tarrant County Democratic Party. TEX.ELEC.CODE ANN. art. 13.12(c) (Vernon Supp.1984). The Code specifies that in order for a candidate to have her name placed on the ballot, her application must be accompanied by a filing fee of $1,500. TEX.ELEC.CODE ANN. art. 13.08(b)(c) (Vernon Supp.1984). However, the Code does not *specifically* state who the proper payee should be when a candidate uses a check to pay the filing fee. The statute nowhere authorizes issuance of a check for payment of the filing fee; therefore, we note that anything other than cash carries with it some inherent risk of being in technical noncompliance with the requirements of the statute. However, practically speaking, payment by check is customary and we believe it is an acceptable method which a candidate may use to pay filing fees. After reviewing the pertinent portions of the Election Code, we conclude that relator's $1,500 check should have been made payable either to the "Tarrant County Democratic Primary" or to the "Tarrant County Democratic Executive Committee" (or to the Chairwoman thereof).

■ The question then becomes whether the tender of a check made payable to an improper payee is sufficient compliance with the Election Code so as to

entitle relator to have her name placed on the ballot. Whereas provisions of election laws relating to voters are to be construed as directory, the provisions of election laws governing the requirements of candidates *are mandatory. Hoot v. Brewer*, 640 S.W.2d 758, 761 (Tex.App.—Houston [1st Dist.] 1982, no writ); *Geiger v. De Busk*, 534 S.W.2d 437, 439 (Tex.Civ.App.—Dallas 1976, no writ). This is because the right to vote is a fundamental one, whereas the right to hold an office is a privilege. *Geiger, supra; McWaters v. Tucker*, 249 S.W.2d 80, 82 (Tex.Civ.App.—Galveston 1952, no writ). As a general rule, election provisions deemed mandatory in nature permit no application of the "substantial compliance" rule. *Branaum v. Patrick*, 643 S.W.2d 745, 749 (Tex.App.—San Antonio 1982, no writ).

■ We find that when relator tendered the check payable to the "State Democratic Executive Committee Primary", this did not constitute strict compliance with the Election Code and does not entitle relator to have her name placed on the May 5, 1984 Democratic Primary ballot.

■ Relator contends that since her noncompliance with the provisions of the Election Code resulted from her reliance upon respondents' actions, respondents are estopped from asserting, as a defense to this mandamus proceeding, the fact that the check was made payable to an improper payee. Respondents claim that their sworn pleadings raise a disputed fact issue which would preclude our issuing a writ of mandamus. Therefore, respondents argue, we should not even address the merits of relator's contention regarding the doctrine of estoppel. In view of our holding that estoppel is inapplicable to the instant case and that mandamus will not lie, we find it unnecessary to consider whether a disputed fact issue actually exists. Even assuming arguendo that respondents (or their agents) misinformed relator as to who should be the actual payee of the check in question, we find the doctrine of estoppel is not applicable in this case. Relator was charged with knowledge of the specific pro-

visions of the Election Code with which she must comply, and the fact that she may have relied upon respondents' statements does not excuse her from complying with the law. *See Brown v. Walker*, 377 S.W.2d 630, 632 (Tex.1964); *Geiger v. De Busk, supra*, at 439; *Newsom v. Adams*, 451 S.W.2d 948 (Tex.Civ.App.—Beaumont 1970, no writ).

■ We hold that relator's tender of the $1,500 check made payable to the "State Democratic Executive Committee Primary" did not constitute strict compliance with the Election Code, and respondents were correct in refusing to accept a check made payable to anyone other than the proper payee. Further, the subsequent timely tender of a second check which was not paid in due course in no way cures the prior defect. *See Bryant v. Dallas County Democratic Executive Com.*, 451 S.W.2d 803 (Tex.Civ.App.—Dallas 1970, no writ), which holds that delivery of a check is not payment unless it is actually paid in due course inasmuch as a check is merely a piece of paper at the time it is delivered, and an offer to redeem it after the deadline cannot transform it into a "payment" before the deadline. *Bryant, supra*, at 804–805.

Accordingly, relator's petition for writ of mandamus is denied.